UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ACCELERANT SPECIALTY
INSURANCE COMPANY,

    Plaintiff,

v.                                             Case No: 8:23-cv-2148-KKM-CPT

Z & G BOAT AND JET SKI RENTALS,
INC. d/b/a BLIND PASS BOAT AND
JET SKI RENTAL,

    Defendant.
_____

## ORDER

Accelerant Specialty Insurance Company sues Z & G Boat and Jet Ski Rentals, Inc., (hereinafter Blind Pass) seeking a declaratory judgment that Accelerant's liability-only commercial yacht insurance policy issued to Blind Pass did not cover a July 2022 incident that seriously injured a Blind Pass customer. Am. Compl. (Doc. 18). Accelerant designated its suit as an admiralty or maritime claim under Federal Rule of Civil Procedure 9(h). *Id.* Blind Pass then counterclaimed for declaratory judgment and breach of contract, asserting diversity jurisdiction, demanding a jury trial, and including a claim for attorney's fees under Florida law. Am. Answer (Doc. 21). Accelerant moves to dismiss Count I of the counterclaim, (Doc. 24), and to strike the demand for a jury trial and the request for

attorney's fees, (Doc. 23). After careful consideration, I deny the motion to dismiss but grant the motion to strike in full.

## I. BACKGROUND

Between April 1, 2022, and April 1, 2023, Accelerant insured Blind Pass under a "liability-only commercial yacht insurance policy" with policy number CSRYP/211513. *See* Am. Compl. ¶ 17; Ins. Policy (Doc. 18-8). On July 26, 2022, Kristin Birdsey executed an agreement with Blind Pass to rent a power boat. *See* Am. Compl. ¶¶ 9–11; Rental Agreement (Doc. 18-1). Two days later, Birdsey had an accident while piloting the power boat, resulting in a serious injury to her hand. *See* Am. Compl. ¶¶ 12–13; Incident Rept. (Doc. 18-2).

On March 20, 2023, Birdsey sued Blind Pass for negligence in the Sixth Judicial Circuit in and for Pinellas County, Florida. *See* Am. Compl. ¶¶ 14–15; State Ct. Compl. (Doc. 18-3). Accelerant was notified of Birdsey's accident and the resulting suit on July 21, 2023, in an email from Blind Pass's agent. *See* Am. Compl. ¶ 16; (Docs. 18-5, 18-6, 18-7). Roughly two months later, Accelerant sued in federal court seeking a judicial determination that its policy did not cover the incident and that it had no duty to defend or indemnify Blind Pass for Birdsey's claims. *See generally* Compl. (Doc. 1) (initially filed Sept. 22, 2024); Am. Compl. (amended Dec. 21, 2023). Blind Pass counterclaimed for

2

declaratory judgment and breach of contract. *See* Answer (Doc. 14) at 8–15 (initially filed Nov. 28, 2023); Am. Answer at 9–16 (amended Dec. 21, 2023).

After both sides amended their pleadings, Accelerant moved to dismiss Count I of Blind Pass's counterclaim (the declaratory judgment count) and to strike Blind Pass's demand for a jury trial and request for attorney's fees. *See* MTD (Doc. 24); Mot. to Strike (MTS) (Doc. 23).

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Motions to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550

3

U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, I accept the complaint's factual allegations "as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). I limit my "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. at 544.

### B. Rule 12(f) Motions to Strike

Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). But "it is well settled among courts in this circuit that motions to strike are generally disfavored and will usually be denied unless it is clear the pleading sought to be stricken is insufficient as a matter of law." *Blanc v. Safetouch, Inc.*, No. 07-cv-1200, 2008 WL 4059786, at *1 (M.D. Fla. Aug. 27, 2008) (collecting cases); *see also Belmer v. Ezpawn Fla., Inc.*, No. 20-cv-1470, 2020 WL 7419663, at *1 (M.D. Fla. Sept. 28, 2020) (noting that courts have "broad discretion" to rule on a motion to strike but emphasizing that such motions are "drastic" and are often considered "time wasters" (quotation omitted)).

A pleading is "insufficient as a matter of law" only if (1) it is "patently frivolous" on its face or (2) "it is clearly invalid as a matter of law." *Belmer*, 2020 WL 7419663, at *1 (quotations omitted). This Court "will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995).

## III. ANALYSIS

Accelerant's motions raise three issues: (1) whether Count I of the counterclaim should be dismissed as duplicative, (2) whether Blind Pass is entitled to a jury trial, and (3) whether Blind Pass can recover attorney's fees under Florida law. *See* MTD at 2–6; MTS at 3–7. I address each in turn.

### A. For Now, Count I of the Counterclaim Is Not Dismissed

Subject to exceptions inapplicable here, the Declaratory Judgment Act allows "any court of the United States, upon the filing of an appropriate pleading," to "declare the rights and other legal relations of any interested party seeking such declaration" in a "a case of actual controversy within [that court's] jurisdiction." 28 U.S.C. § 2201(a). Count I of the counterclaim seeks a declaratory judgment determining coverage under the insurance contract, as well as rulings on Accelerant's duty to defend and indemnify Blind Pass in Birdsey's underlying lawsuit. Am. Answer at 13–14. Count I "respectfully request[s] that

[I] adjudge and declare that the insurance policy provides coverage for the claims asserted by Birdsey and her [c]omplaint against [Blind Pass] and that timely notice [to Accelerant] was provided, and the plain language of the policy provides coverage, accordingly, [Accelerant has] a duty to defend and indemnify [Blind Pass] with respect to the claims asserted by Kristin Birdsey." Am. Answer at 14.

In Accelerant's view Count I should be dismissed for two reasons. *See* MTD at 1–7. First, Accelerant argues that Count I "is redundant and serves no useful purpose" because it "is a mirror image of the Amended Complaint." *Id.* at 4. Second, Accelerant contends that Count I is duplicative of Count II, which states a claim for breach of the insurance contract. *Id.* at 5–6. At this stage of the litigation, I am unpersuaded.

First, although Count I is largely concerned with the same subject matter as Accelerant's amended complaint, it is not clear that a ruling against Accelerant on the amended complaint would provide Blind Pass with identical relief to a ruling in its favor on Count I. *Compare* Am. Compl. ¶¶ 21–45, *with* Am. Answer at 9–16. "When deciding whether to dismiss . . . a counterclaim as redundant . . . courts consider whether the declaratory judgment serves a useful purpose." *New Mkt. Realty 1L LLC v. Great Lakes Ins. SE*, 341 F.R.D. 322, 325 (M.D. Fla. 2022). "To determine whether the declaratory judgment serves a useful purpose, courts should consider whether resolution of plaintiff's claim, along with the affirmative defenses asserted by defendants, would resolve all

6

questions raised by the counterclaim." *Id.* (quotations omitted). Indeed, "even where the counterclaim is wholly redundant, this Court may exercise its discretion by not dismissing [it]." *Id.* (cleaned up). Given the uncertainty and the lack of potential prejudice (even if Accelerant turns out to be correct and Count I is dismissed later, a duplicative declaratory judgment count would not have expanded the scope of discovery), dismissal is inappropriate now.[1]

Second, the fact that Blind Pass pleaded a breach of contract counterclaim, alone, does not prevent it from also seeking a judicial declaration clarifying the Parties' rights under the insurance contract. *See, e.g., Eaton v. Principal Life Ins. Co.*, No. 8:20-cv-61, 2022 WL 972452, at *4 (M.D. Fla. Mar. 31, 2022) (analyzing breach of contract claim together with "derivative" declaratory judgment claim). That said, "[c]ourts have broad discretion to decide whether to entertain a request for a declaratory judgment" and "frequently decline to entertain" them when the request "is redundant with an earlier claim." *RLI Ins. Co. v. Coastline Tile of Pinellas, LLC*, 591 F. Supp. 3d 1182, 1190 (M.D. Fla. 2022). Because Accelerant does not move to dismiss Blind Pass's breach of contract counterclaim, and because it is not clear that Blind Pass's claim for declaratory relief is

---

[1] Blind Pass also argues that Count I is not duplicative because "Accelerant has plead its declaratory action under F.R.C.P. 9(h); thereby invoking admiralty and attempting to eliminate [Blind Pass's] right to a jury trial. By contrast, [Blind Pass] has brought [Count I] under diversity jurisdiction and seeks a jury trial which is preserved for declaratory actions under [Federal Rule of Civil Procedure 57]." Resp. to MTD (Doc. 24) at 3. This argument is unavailing because, as I explain below, Eleventh Circuit precedent precludes Blind Pass's demand for a jury trial on its counterclaims.

necessarily duplicative of Accelerant's, I decline to dismiss Count I of the counterclaims at this time.

### B. Blind Pass Is Not Entitled to a Jury Trial on Its Counterclaims

Accelerant next argues that Blind Pass is not entitled to a jury trial on its counterclaims, contending that Accelerant's election of admiralty procedure under Federal Rule of Civil Procedure 9(h) controls. MTS at 3–5. Blind Pass responds that the admiralty jurisdiction statute's "saving-to-suitors" clause preserves its right to a jury trial. Resp. to MTS (Doc. 28) at 3–11. In the alternative, it requests that I "try this case before an advisory jury." *Id.* at 12. Because Eleventh Circuit precedent provides that Blind Pass is not entitled to a jury trial under these circumstances, I agree with Accelerant. I also decline Blind Pass's invitation to use an advisory jury.

The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. CONST. Amend. VI, cl. 1. But that constitutional right does not generally extend to suits in admiralty. *See DeRoy v. Carnival Cruise Corp.*, 963 F.3d 1302, 1314 (11th Cir. 2020) ("Unlike with federal cases brought at law, no Seventh Amendment right to a jury trial applies in admiralty cases."); *Parsons v. Bedford, Breedlove, and Robeson*, 28 U.S. 433, 446 (1830) ("The phrase 'common law,' found in [the Seventh Amendment], is used in contradistinction to equity, and admiralty, and maritime jurisprudence."). The admiralty

jurisdiction statute adds a wrinkle by "saving to suitors in all cases all other remedies to which they are otherwise entitled," 28 U.S.C. § 1333(1), language that "embodies a presumption in favor of jury trial and common law remedies in the forum of the claimant's choice," *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1314 (11th Cir. 2020) (quotations omitted). Under the saving-to-suitors clause, "a plaintiff in a maritime case alleging an *in personam* claim" generally has three options: "(1) the plaintiff may file suit in federal court under admiralty jurisdiction; (2) the plaintiff may file suit in federal court under diversity jurisdiction; or (3) the plaintiff may file suit in state court." *Id.* (cleaned up).

The Federal Rules of Civil Procedure, which, together with the supplemental rules for admiralty or maritime cases, have governed procedure in federal maritime cases since 1966, implements the saving-to-suitors clause. Under Rule 9:

> If a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject-matter jurisdiction on some other ground, the pleading may designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A claim cognizable only in the admiralty or maritime jurisdiction is an admiralty or maritime claim for those purposes, whether or not so designated.

FED. R. CIV. P. 9(h)(1). In turn, Rule 38, which governs the procedure for demanding a jury trial, "do[es] not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim under Rule 9(h)." *Id.* 38(e). Thus, in a federal case in which both admiralty jurisdiction and another source of federal jurisdiction exists, a plaintiff has two options: (1)

9

proceed as an admiralty case under Rule 9(h), which sacrifices the right to a jury trial, or (2) proceed on the alternative jurisdictional basis, which will usually preserve the right.

The Eleventh Circuit has held that when an insurer files a "declaratory judgment complaint as to [a marine insurance policy] claim[ing] the special benefits of admiralty procedures, including a non-jury trial, by setting forth why admiralty jurisdiction exist[s] and by designating th[e] action under Rule 9(h)," the insured cannot demand a jury trial on a counterclaim for breach of contract. *St. Paul Fire and Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1188 (11th Cir. 2009); *see also id.* at 1186–89. Thus, if *Lago Canyon* applies, precedent requires that I grant Accelerant's motion.

Blind Pass resists that conclusion by citing decisions from the Fourth Circuit and the Ninth Circuit that have reached different results, as well as a decision from this district distinguishing *Lago Canyon* in a Jones Act tort case. *See* Resp. to MTS at 3–11 (citing, among other authorities, *Wilmington Tr. v. U.S. Dist. Ct. for the Dist. of Hawaii*, 934 F.2d 1026 (9th Cir. 1991), *In re Lockheed Martin Corp.*, 503 F.3d 351, 355 (4th Cir. 2007), and *Salty Dawg Expedition, Inc. v. Borland*, 301 F. Supp. 3d 1189 (M.D. Fla. 2017)). But the Eleventh Circuit was aware of the contrary circuit decisions when it decided *Lago Canyon*, and they did not change the result. *See Lago Canyon*, 561 F.3d at 1188 n.15 (acknowledging both *Wilmington Trust* and *In re Lockheed Martin Corp.*). Indeed, a concurring opinion in *Lago Canyon* engaged extensively with *Lockheed Martin*,

10

concluding for one judge's part that, "[a]lthough we are bound by [prior panel precedent], I believe that the Fourth Circuit sets forth a more persuasive analysis." *See id.* at 1194 (Wilson, J., concurring). Whatever the wisdom of *Lago Canyon*, whether it should continue to govern is a question for the en banc Eleventh Circuit or the Supreme Court, not for me.

As to *Borland*, the distinctions relied on there are unavailable for three reasons. First, Blind Pass's counterclaims involve the same "issue" as Accelerant's declaratory judgment action: Whether the policy covers Birdsey's incident and requires Accelerant to defend and indemnify Blind Pass in Birdsey's underlying lawsuit. *Compare* Am. Compl. ¶ 20, *with* Am. Answer at 14. Just like *Lago Canyon*'s counterclaim, Blind Pass's "counterclaim is the flip side of [Accelerant's] own claim." *Compare Lago Canyon*, 561 F.3d at 1185 (counterclaim for breach of contract "arose out of the same operative facts and [the] same Marine Policy" as declaratory judgment suit), *with Borland*, 301 F. Supp. 3d at 1190, 1194 (explaining that a counterclaim for negligence, unseaworthiness, and maintenance and cure was not the mirror image of a declaratory judgment suit alleging that the counterclaimant was not a "seaman" under the Jones Act). Second, no federal statute (other than, in the view of other circuits, arguably the saving-to-suitors clause) provides Blind Pass an express right to a jury trial. *Compare Lago Canyon*, 561 F.3d at 1184–85 (no jury trial for a counterclaim for breach of contract), *with Borland*, 301 F. Supp. 3d at

11

1190–91 (explaining that the Jones Act expressly provided for a jury trial). Third, like the complaint in *Lago Canyon* and unlike in *Borland*, Accelerant's complaint for declaratory judgment asserted admiralty as the sole basis for federal jurisdiction. *See Borland*, 301 F. Supp. 3d at 1190, 1193–94 (distinguishing *Lago Canyon* on this ground).

Blind Pass raises weighty questions regarding its right to a jury trial under both the Seventh Amendment and the saving-to-suitors clause. But the Eleventh Circuit has already answered those questions and in a manner adverse to Blind Pass's position. *See Lago Canyon*, 561 F.3d at 1188–89. Under that precedent, Blind Pass is not entitled to a jury trial on its counterclaims.

I also deny Blind Pass's request for an advisory jury. To be sure, the use of an advisory jury is permissible in situations like this one. *See* FED. R. CIV. P. 39(c). But it is not required. *See, e.g.*, *Landivar v. Celebrity Cruises, Inc.*, No. 21-cv-20815, 2021 WL 7186402, at *5 (S.D. Fla. July 12, 2021) ("Because an advisory jury is a function of assistance and not of right, the Court's decision on whether to use an advisory jury is discretionary."). Blind Pass "offer[s] no argument to support [its] request for an advisory jury aside from [a] claim that courts in this district regularly try cases to an advisory jury where entitlement to a jury does not exist as a matter of right" and has "cited no unique or compelling circumstances necessitating the assistance of an advisory jury." *Id.* (quotations omitted). To the contrary, empaneling an advisory jury would require the Court and the

parties to expend additional time and expenses to select an advisory jury, draft jury instructions, and instruct the advisory jury." *Landivar*, 2021 WL 7186402, at *5. Absent an especially compelling reason to do so, I decline to try the case to an advisory jury.

### C. Blind Pass Is Not Entitled to Attorney's Fees Under Florida Law Because Florida Law Does Not Apply

Finally, Accelerant argues that Blind Pass cannot recover attorney's fees under Florida law because the insurance contract contains a choice of law clause stipulating that federal maritime law and New York law will govern disputes arising under or in connection with the policy. MTS at 5–7. I agree with Accelerant.[2]

Whether Blind Pass can recover attorney's fees under Florida law turns on a choice of law question. Under Florida law, an insured may recover statutory attorney's fees "[u]pon the rendition of a judgment or decree . . . against [the] insurer and in favor of [the] insured . . . under a policy or contract executed by the insurer." § 627.428(1), FLA. STAT. In contrast, "[t]he prevailing party in an admiralty case is not entitled to recover its attorneys' fees as a matter of course." *Natco Ltd. P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1193 (11th Cir. 2001). That everyone agrees federal maritime law applies under the choice of law clause does not resolve the matter, though, because there is an exception to the general maritime rule rooted in respect for the States' traditional role in regulating

---

[2] Even if Florida law applied, it is not clear that fees would be available under § 627.428, given that the statute was repealed by the Florida Legislature on March 24, 2023. *See* Fla. HB 837, § 11 (2023). Because Florida law does not apply, and because the Parties have not raised the impact of tort reform as an issue, I do not discuss it further.

13

maritime insurance. In short, if federal maritime choice of law rules would result in the application of Florida substantive law, "a district court may award attorney's fees pursuant to [§ 627.48] against an insurer in a maritime insurance contract case." *All Underwriters v. Weisberg*, 222 F.3d 1309, 1315 (11th Cir. 2000); *see also RMI Holdings v. Aspen Am. Ins. Co.*, No. 20-14525, 2021 WL 2980528, at *2 (11th Cir. 2021) (per curiam) (same).

Accelerant argues that Florida law is inapplicable because the policy's choice of law clause designates New York as the only source of state law. MTS at 5–7. The clause states in full:

> It is hereby agreed that any dispute or claim arising hereunder (including non-contractual disputes or claims), or in connection with this Insuring Agreement, shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, any dispute or claim arising hereunder (including non-contractual disputes or claims), or in connection with this Insuring Agreement, is subject to the substantive laws of the State of New York.

Ins. Policy at 19. Blind Pass responds that the clause is unenforceable because "the State of New York has no substantial relationship to either [Blind Pass] or Accelerant." *See* Resp. to MTS at 13–15. Having disposed of the choice of law clause, Blind Pass then argues that general federal maritime choice of law rules would result in the application of Florida's substantive law, including § 627.428. *See id.* at 15–18.

The Supreme Court opined on the enforceability of maritime choice of law clauses earlier this term in *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC* (*Raiders*

14

*Retreat*), 601 U.S. 65 (2024). The "bottom line" from *Raiders Retreat* is clear: "As a matter of federal maritime law, choice-of-law provisions in maritime contracts are presumptively enforceable." *Id.* at 76. That said, the Supreme Court recognized two narrow "exceptions when the clauses are not enforceable." *Id.* One such exception (and the only one relevant here) is "when parties can furnish no reasonable basis for the chosen jurisdiction." *Id.* "For example, it would be unreasonable to pick the law of a distant foreign country without some rational basis for doing so." *Id.* at 76–77.

Make no mistake, though, this exception does not give federal courts a freewheeling license to disregard maritime choice of law clauses based on second-guessing parties' agreements. Rather, "the 'no reasonable basis' exception must be applied with substantial deference to the contracting parties, recognizing that maritime actors may sometimes choose the law of a specific jurisdiction because, for example, that jurisdiction's law is 'well developed, well known, and well regarded.' " *Id.* at 77 (quoting Br. for Am. Inst. of Marine Underwriters et al. as *Amici Curiae* at 17).

Blind Pass's argument that the choice of law clause's designation of New York is unenforceable under the "no reasonable basis" exception fails. Resp. to MTS at 14. After all, it explains, Blind Pass "is a Florida corporation with its principal place of business in Florida" and "the incident underlying the claim took place in Florida and involve[d] a Florida citizen." *Id.* Accelerant is organized under Arkansas law and has its principal place

15

of business in Georgia. *See id.* "Clearly, [says Blind Pass,] New York does not have a substantial relationship to the parties or the transaction at issue." *Id.* at 15. There are three problems with this argument, two in the rule statement and one in the analysis.

First, Blind Pass applies the wrong standard for determining whether a maritime insurance contract's choice of law clause is unenforceable. *Raiders Retreat*'s "no reasonable basis" exception requires only that contracting parties "furnish [a] reasonable [(sometimes described as 'rational')] basis for the chosen jurisdiction." 601 U.S. at 76–77. Blind Pass's "no substantial relationship" test, which courts before *Raiders Retreat* have sometimes applied, *see, e.g.*, *Great Lakes Reinsurance (UK), PLC v. Rosin*, 757 F. Supp. 2d 1244, 1250–51 (S.D. Fla. 2010) (collecting cases), appears to demand more. Indeed, Blind Pass's emphasis on the Parties' domiciles and the location of the underlying incident closely mirrors a "most significant relationship" analysis under the Second Restatement of Conflict of Laws, which the Eleventh Circuit applies to unguided choice of law inquiries. *Compare RMI Holdings*, 2021 WL 2980528, at *3–4 (applying the most significant relationship test to a maritime insurance contract in the absence of a choice of law clause), *with Raiders Retreat*, 601 U.S. at 646 ("choice-of-law provisions in maritime contracts are presumptively enforceable" outside of two "narrow" exceptions). Requiring an agreed-on jurisdiction to have a "substantial relationship" with the parties or the contract rather than simply asking whether the parties had a "reasonable" or "rational" basis to select the

16

jurisdiction would show none of the deference that *Raiders Retreat* requires. It would also undermine the presumption of enforceability that the Supreme Court just announced. Thus, as far as *Raiders Retreat*'s "no reasonable basis" exception and Blind Pass's "no substantial relationship" exception are inconsistent, the Supreme Court's articulation controls.

Second, even if the Supreme Court had not been clear that the "no reasonable basis" exception was "narrow" and that courts must apply it "with substantial deference to the contracting parties, recognizing that maritime actors may sometimes choose the law of a specific jurisdiction because, for example, that jurisdiction's law is 'well developed, well known, and well regarded,'" *Raiders Retreat*, 601 U.S. at 77, the lack of a substantial relationship alone is not enough to void the Parties' agreement to New York law under general choice of law rules. The relevant portion of the Second Restatement states that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless . . . the chosen state has no substantial relationship to the parties or the transaction *and* there is no other reasonable basis for the parties' choice." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(a) (1971) (emphasis added); *see also id.* (1988 Revision) (same). In other words, a reasonable basis for the contracting parties' choice is enough to give effect to that

17

choice under the Second Restatement. So even setting *Raiders Retreat* aside, Blind Pass articulates an overly restrictive version of the relevant choice of law rule.

Third, under an appropriately deferential "reasonable" or "rational" basis standard, there are good reasons for parties to a maritime insurance contract to agree that New York law should govern. Consider the similar facts in *Raiders Retreat*. *See* 601 U.S. at 68. There, a Pennsylvania business bought maritime insurance from an insurer "organized in Germany and headquartered in the United Kingdom." *Id.* The policy "included a choice-of-law provision that . . . selected New York law to govern future disputes between the parties." *Id.* The choice of law clause became contested after the insured vessel was involved in an accident in Florida, resulting in litigation in the Eastern District of Pennsylvania. *Id.* Before the Supreme Court, Raiders Retreat did not argue (likely because it would have been difficult to do so) "that the parties' choice of New York's well-known and highly elaborated commercial law was unreasonable." *Id.* at 77 (quotations omitted). Although New York would probably not have had the "most significant relationship" with the parties or the policy in *Raiders Retreat*, it was far from a "distant foreign country." *See id.* at 76. And even if it were, that the contracting parties to a maritime insurance contract would seek the benefit of New York's "well-known and highly elaborated commercial law" is anything but irrational. *See id.* at 77 (quotations omitted). The same is true for the policy at issue, and Accelerant asserts this rationale in its reply. Reply (Doc. 38) at 5–8.

18

In the light of Accelerant's articulation of a reasonable basis for selecting New York law to govern the policy in addition to federal maritime law, I conclude that the choice of law clause is enforceable. Thus, Florida law does not apply and Blind Pass lacks any right to seek attorney's fees under § 627.428.

IV. **CONCLUSION**

Accordingly, it is **ORDERED**:

1. Accelerant's Motion to Dismiss Count I of the Counterclaim (Doc. 24) is **DENIED**. Accelerant must answer the Amended Counterclaim by **June 25, 2024**.

2. Accelerant's Motion to Strike Blind Pass's Jury Demand and Request for Attorney's Fees (Doc. 23) is **GRANTED**, and Blind Pass's request for an advisory jury is **DENIED**. The Court **STRIKES** Blind Pass's jury demand and request for attorney's fees.

3. The Parties' Joint Motion for Extension of Time to File an Amended Notice of Mediation (Doc. 42) is **GRANTED**. Lead Counsel must file an amended notice no later than **July 25, 2024**, and the Parties must mediate by **September 5, 2024**.

ORDERED in Tampa, Florida, on June 11, 2024.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge